UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| HUDSON INSURANCE COMPANY, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| vs. § | |
| § | CIVIL ACTION NO. 1:24-cv-845 |
| TEXPORT TRUCKING LLC, § | |
| ALEJANDRO RODRIGUEZ-LIMON, § | |
| and MANUEL ARAGON-SEGURA, § | **JURY DEMAND** |
| § | |
| *Defendants.* § | |

## HUDSON INSURANCE COMPANY'S ORIGINAL COMPLAINT
## AND REQUEST FOR DECLARATORY JUDGMENT

TO THE HONORABLE COURT:

COMES NOW, HUDSON INSURANCE COMPANY, Plaintiff, and files this Original Complaint and Request for Declaratory Judgment against Texport Trucking LLC, Alejandro Rodriguez-Limon and Manuel Aragon-Segura, and in support thereof, would respectfully show the following:

**I.
PARTIES**

1. Plaintiff Hudson Insurance Company ("Hudson") is a Delaware corporation with its principal place of business in New York, New York.

2. Defendant Texport Trucking LLC ("Texport") is a domestic limited liability company incorporated in Texas with its principal place of business in Eagle Pass, Texas. Texport may be served through its registered agent, Marisa Arreola, at 2627 El Indio Hwy, Eagle Pass, Texas 78852.

3. Defendant Alejandro Rodriguez-Limon ("Limon") is an individual residing in

Maverick County, Texas. Limon may be served with citation at 1946 Edison Road, Eagle Pass, Texas 78852 or wherever he may be found.

4. Defendant Manuel Aragon-Segura ("Aragon-Segura") is an individual residing in Piedras Negras, Coahuila, Mexico. Aragon-Segura may be served with citation at Sonora #129, 26094 Col. San Joaquin, Piedras Negras, Coahuila, Mexico or wherever he may be found.

## II.
## JURISDICTION AND VENUE

5. The foregoing paragraphs are incorporated herein by reference.

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the Defendants are not a citizen of any state of which the Plaintiff is also a citizen, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Hudson is a Delaware corporation. Hudson has its principal place of business or principal office in New York, New York. Therefore, for diversity of citizenship purposes, Hudson is a citizen of the states of Delaware and New York.

8. Texport is a Texas limited liability company. Texport has its principal place of business or principal office in Eagle Pass, Texas. Therefore, for diversity of citizenship purposes, Texport is a citizen of the state of Texas.

9. Limon is an individual residing in Maverick County, Texas. Therefore, for diversity of citizenship purposes, Limon is a citizen of the state of Texas.

10. Aragon-Segura is an individual residing in Piedras Negras, Coahuila, Mexico. Therefore, for diversity of citizenship purposes, Aragon-Segura is a citizen of Mexico.

11. The Court has personal jurisdiction over Defendant Texport because Texport is a Texas company and has continuous, systematic contacts with Texas and this cause of action is related to that activity. Further, Texport is a defendant in the Texas litigation over which this

Declaratory Judgment action is filed.

12. Further, the Court has personal jurisdiction over Defendant Limon because Limon is a Texas Citizen. Limon is also a defendant in the Texas litigation over which this Declaratory Judgment action is filed.

13. Additionally, the Court has personal jurisdiction over Defendant Aragon-Segura because Aragon-Segura is the plaintiff in the Texas litigation over which this Declaratory Judgment action is filed.

14. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in the Western District of Texas.

### III.
### FACTUAL BACKGROUND

15. Hudson issued a Commercial Motor Carrier Policy to Texport bearing Policy Number MBC 100404 04, effective from June 6, 2021, to June 6, 2022 (the "Hudson Policy").[1]

16. Texport and Limon have made a claim under the Hudson Policy seeking defense and indemnity for a lawsuit alleging personal injuries that arose out of a motor vehicle accident that occurred on December 11, 2021, in which Limon was the driver, and Aragon-Segura was a passenger (the "Underlying Incident"). Aragon-Segura brought suit on October 19, 2023, in the 365th Judicial District Court of Maverick County, Texas styled Cause No. 23-10-42681-MCVAJA, *Manuel Aragon-Segura v. Texport Trucking, LLC and Alejandro Rodriguez-Limon* (the "Underlying Lawsuit").

17. Hudson began defending Texport and Limon shortly after the filing of the

---

[1] A true and correct copy of the 2021-2022 Hudson Policy is attached hereto as ***Exhibit "A,"*** and is incorporated by reference as if set forth fully herein.

Underlying Lawsuit. A Reservation of Rights ("ROR") letter was sent to Texport and Limon on December 14, 2023. In the ROR, Hudson requested that Texport and Limon provide certain information to further assist Hudson in its coverage investigation of the Underlying Lawsuit. Texport and Limon did not respond to the ROR letter and did not provide any of the requested information. Hudson sent an additional letter to Texport and Limon on April 4, 2024, again requesting that Texport and Limon provide certain information to assist Hudson in its investigation of the Underlying Lawsuit. To date, Texport and Limon have not responded to Hudson's request, and have not provided any of the requested information.

*The Underlying Lawsuit:*

18. Aragon-Segura's Original Petition includes the following pertinent allegations of fact[2]:

    a. On December 11, 2021, [Aragon-Segura] was the passenger of a 2020 Kenworth tractor-trailer operated by [Limon] an employee, partner, vice-principal, driver and/or agent of [Texport].[3]

    b. [Aragon-Segura] and [Limon] were traveling southeast on US Highway 90 near MP 354 in Val Verde County, Texas when [Limon] suddenly and unexpectedly drove off the roadway and lost control of the vehicle, causing the vehicle to rollover.[4]

    c. The collision and impact on Plaintiff were a result of [Limon's] negligent and gross negligent operation of the tractor-trailer causing the serious and permanent injuries to Plaintiff.[5]

---

[2] A true and correct copy of Plaintiff's Original Petition is attached hereto as **Exhibit "B,"** and is incorporated by reference as if set forth fully herein.
[3] *See* **Exhibit "B,"** ¶ 5.1.
[4] *Id.*
[5] *Id.* at ¶ 5.2.

      d.      At the time of the collision described herein, [Limon] was the agent, driver, servant /or employee of [Texport] and was acting within the course and scope of his employment as an agent, driver, servant and/or employee of [Texport].[6]

      e.      [Limon] was operating the tractor-trailer with the knowledge, consent, and actual permission and/or implied permission of [Texport].[7]

### *Independent Contractor Agreement:*

19.    Aragon-Segura entered into an Independent Contractor Agreement with Texport on October 16, 2019.[8]

20.    Under the Independent Contractor Agreement, Aragon-Segura agreed to perform services for Texport, including providing transportation from Mexico into the United States of America, in exchange for payment.[9]

## IV.
## THERE IS NO COVERAGE FOR THE UNDERLYING LAWSUIT.

21.    The Hudson Policy contains the following provisions that preclude any duty by Hudson to defend or indemnify Texport and Limon in the Underlying Lawsuit.

             \*          \*          \*

**SECTION II – COVERED AUTOS LIABILITY COVERAGE**

**A.    Coverage**

    We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

---

[6] *See **Exhibit "B,"*** ¶ 6.1.
[7] *Id.*
[8] *See **Exhibit "C,"*** a true and correct copy of the Independent Contractor Agreement entered into between Texport and Aragon-Segura on October 16, 2019. Included with ***Exhibit "C"*** is an English version of the Independent Contractor Agreement, which is blank, for purposes of translation.
[9] *See **Exhibit "C"*** Section 1 and Section 2.

5

\*\*\*

We will have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1. **Who Is An Insured**

   The following are "insureds":

   **a.** You for any covered "auto".

   **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

   **(1)** The owner or any "employee", agent or driver of the owner, or anyone else from whom you hire or borrow a covered "auto".

   **(2)** Your "employee" or agent if the covered "auto" is owned by that "employee" or agent or a member of his or her household.

   **(3)** Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

   **(4)** Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

   **(5)** A partner (if you are a partnership), or member (if you are a limited liability company), for a covered "auto" owned by him or her or a member of his or her household.

   **c.** The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

   **d.** The lessor of a cover "auto" that is not a "trailer" or any "employee", agent or driver of the lessor while the "auto" is leased to you under a written agreement if the written agreement between the lessor and you does not require the lessor to hold you harmless and then only when the leased "auto" is used in your business as a

"motor carrier" for hire.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

However, none of the following is an "insured":

**(1)** Any "motor carrier" for hire or his or her agents or "employees", other than you and your "employees":

**(a)** If the "motor carrier" is subject to motor carrier insurance requirements and meets them by a means other than "auto" liability insurance.

**(b)** If the "motor carrier" is not insured for hired "autos" under an "auto" liability insurance form that insures on a primary basis the owners of the "autos" and their agents and "employees" while the "autos" are leased to that "motor carrier" and used in his or her business.

However, Paragraph (1) above does not apply if you have leased an "auto" to the for-hire "motor carrier" under a written agreement in which you have held that "motor carrier" harmless.

**(2)** Any rail, water or air carrier or its "employees" or agents, other than you and your "employees", for a "trailer" if "bodily injury" or "property damage" or a "covered pollution cost or expense" occurs while the "trailer" is detached from a covered "auto" you are using and:

(a) Is being transported by the carrier; or

(b) Is being loaded on or unloaded from any unit of transportation by the carrier.

\*\*\*

**B. Exclusions**

This insurance does not apply to any of the following:

\*\*\*

**4.   Employee Indemnification and Employer's Liability**

"Bodily injury" to:

a. An "employee" of the "insured" arising out of and in the course of:

**(1)** Employment by the "insured"; or

7

        **(2)** Performing the duties related to the conduct of the "insured's" business; or

    **b.** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

This exclusion applies:

**(1)** Whether the "insured" may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who may pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

(* * *)

**5.**    **Fellow Employee**

"Bodily injury" to:

**a.** Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

**b.** The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a**. above. (***)

(* * *)

## SECTION V – MOTOR CARRIER CONDITIONS

The following conditions apply in addition to the Common Policy conditions:

**A. Loss Conditions**

(* * *)

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full

8

compliance with the following duties:

(* * *)

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination at our expense, by physicians of our choice, as often as we reasonably require.

(* * *)

**SECTION VI – DEFINITIONS**

\*\*\*

**F.**    "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

\*\*\*

**L.**    "Motor carrier" means a person or organization providing transportation by "auto" in the furtherance of a commercial enterprise.

\*\*\*

**Q.**    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

\*\*\*

**ENDORSEMENT FOR
MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980**

\*\*\*

9

The policy to which this endorsement is attached providers primary or excess insurance, as indicated by "[X]" for the limits shown:

 This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident.

**DEFINITIONS AS USED IN THIS ENDORSEMENT**

**ACCIDENT** includes continuous or repeated exposure to conditions which result in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to body, sickness, or disease to any person, including death resulting from any of these.

\*\*\*

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, within Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any

10

accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provision of the policy except for the agreement contained in this endorsement.

(***)

## FORM F
## UNIFORM MOTOR CARRIER-BODILY INJURY AND
## PROPERTY DAMAGE LIABILITY
## INSURANCE ENDORSEMENT

It is agreed that:

1. The certification of the policy, as proof of financial responsibility under the provision of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligation assumed in making such certification.

2. The Uniform Motor Carrier Bodily Injury and Property Damage Liability Certificate of Insurance has been filed with the State Commissions indicated below.

3. This endorsement may not be canceled without cancellation of this policy to which it is attached. Such cancellation may be effected by the Company or the insured giving thirty (30) days' notice in writing to the State Commission with which such certificate has been filed, such thirty (30) days' notice to commence to run from the date the notice is actually received in the office of such Commission.

***

X Indicates State Commissioners with whom Uniform Motor Carrier Bodily Insjury [sic] and Property Damage Liability Certificate of Insurance has been filed.

***

X Texas

***

            *     *     *

  22.  Hudson relies on the entire contents of the Hudson Policy and incorporates all of the provisions as if set forth fully herein.

***The Employee Indemnification and Employer's Liability Exclusion Precludes Coverage for the Underlying Lawsuit.***

23. Under the Hudson Policy's Employee Indemnification and Employer's Liability Exclusion, the Hudson Policy does not apply to "bodily injury" to an "employee" of the "insured" arising out of and in the course of (1) employment by the "insured" or (2) performing the duties related to the conduct of the "insured's" business. The Underlying Lawsuit arises out of alleged personal injuries sustained by Aragon-Segura. Aragon-Segura was an employee of Texport who was hired to transport loads from Mexico into the U.S. At the time of the collision, Aragon-Segura was in the process of transporting a load from Mexico into the U.S. for Texport. Therefore, Hudson has no duty to defend or indemnify Texport and/or Limon for the Underlying Lawsuit pursuant to the Employee Indemnification and Employer's Liability Exclusion in the Hudson Policy.

***The Fellow Employee Exclusion Precludes Coverage for the Underlying Lawsuit.***

24. Under the Hudson Policy's Fellow Employee Exclusion, the Hudson Policy does not apply to "bodily injury" to any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business. The Underlying Lawsuit arises out of alleged personal injuries sustained by Aragon-Segura while he was the passenger in a tractor-trailer owned by Texport and operated by Limon. Limon and Aragon-Segura were both employees of Texport. At the time of the Underlying Incident, Limon and Aragon-Segura were fellow employees in the process of transporting a load from Mexico into the U.S. for Texport. Therefore, Hudson has no duty to defend or indemnify Texport and/or Limon for the Underlying Lawsuit pursuant to the Fellow Employee Exclusion in the Hudson Policy.

***The MCS-90 and Form F Endorsements Do Not Provide Coverage for Employee Injuries.***

25. The Hudson Policy's MCS-90 and Form F Endorsements are a mechanism by

which a motor carrier demonstrates compliance with the minimum financial requirements in the Federal Motor Carrier Safety Act, and are designed for the protection of the public at large. However, the MCS-90 and Form F Endorsements do not provide insurance coverage for injuries of the insured's employees in the course of their employment. As discussed above, the Underlying Lawsuit arises out of injuries sustained by Aragon-Segura, an employee of Texport in the course and scope of his employment. At the time of the Underlying Incident, Aragon-Segura was engaged in the course of his employment with Texport, transporting a load from Mexico into the U.S. for Texport. Therefore, Hudson has no duty to defend or indemnify Texport and/or Limon for the Underlying Lawsuit under the MCS-90 or Form F Endorsements in the Hudson Policy.

### *Hudson has No Duty to Provide Coverage due to Texport and Limon's Failure to Cooperate.*

26. Hudson has no duty to provide coverage under the Hudson Policy unless the insured complies with certain duties, including cooperating with Hudson in the investigation of the claim or defense against the "suit". Texport and Limon have failed to cooperate with Hudson in the investigation of the Underlying Lawsuit by failing to provide information related to the Underlying Lawsuit that has been specifically requested by Hudson to assist it in its coverage investigation. Texport and Limon's failure to cooperate has caused actual prejudice to Hudson.

### *Extrinsic Evidence can be Considered for the Duty to Defend.*

27. The Texas Supreme Court formally recognized an exception to the Eight Corners Rule in *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 202-03 (Tex. 2022). In *Monroe*, the Court held that courts can consider extrinsic evidence where there are gaps in the claimant's pleadings, and the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability; (2) does not contradict the facts alleged in the pleadings; and (3) conclusively establishes the coverage facts to be proved. *Id.*

28. Pursuant to the precedent in *Monroe*, this court can properly consider the Independent Contractor Agreement as extrinsic evidence because there are gaps in Aragon-Segura's pleadings, and the Independent Contractor Agreement (1) goes solely to an issue of coverage and does not overlap with the merits of liability; (2) does not contradict facts alleged in Aragon-Segura's pleadings; and (3) conclusively establishes the coverage facts to be proved.

## V.
## DECLARATORY JUDGMENT AGAINST TEXPORT, LIMON, AND ARAGON-SEGURA

29. The foregoing paragraphs are incorporated herein by reference.

30. An actual controversy exists between Hudson and Defendants Texport, Limon, and Aragon-Segura with respect to insurance coverage for the Underlying Lawsuit. Hudson is currently defending Texport and Limon under a Reservation of Rights. However, Hudson believes there is no coverage for this claim because the Hudson Policy's Employee Indemnification and Employer's Liability Exclusion is triggered, precluding any duty by Hudson to defend or indemnify Texport or Limon for the Underlying Lawsuit. Additionally, the Hudson Policy's Fellow Employee Exclusion separately precludes any duty to defend or indemnify Texport or Limon in the Underlying Lawsuit.

31. There is also no coverage created by the MCS-90 or Form F Endorsements in the Policy. Thus, Hudson has no duty to defend or indemnify Texport or Limon for the Underlying Lawsuit, because these endorsements do not apply to employees of Texport while engaged in the course of their employment for Texport. Finally, because Texport and Limon have failed to cooperate, as required by the Hudson Policy's insuring agreement, Hudson has no coverage obligations under the Hudson Policy.

32. Aragon-Segura, as a potential, future judgment creditor of Texport and Limon, has

been included as a Defendant in this declaratory judgment action because he may have a future interest in the outcome of Hudson's dispute with Texport and Limon. *See* FED. R. CIV. P. 57.

33. The Hudson Policy's express provisions, together with the allegations in the Underlying Lawsuit and the permissible extrinsic evidence, establishes that Hudson has no duty to defend or indemnify Texport and/or Limon in the Underlying Lawsuit.

34. Accordingly, Hudson respectfully requests that this Court declare the rights, status, and legal obligations of the parties in connection with the facts set forth herein, the Underlying Lawsuit, the permissible extrinsic evidence, the Hudson Policy, and established law. Specifically, Hudson asks this Court for a declaration that it has no duty to defend Texport or Limon in the Underlying Lawsuit. Hudson further requests a declaration that Hudson has no duty to indemnify Texport or Limon for any future settlement or judgments that may be entered in the Underlying Lawsuit.

## VI.
## JURY DEMAND

35. Hudson demands a trial by jury for all issues of fact and tenders the appropriate fee with this complaint.

## VII.
## CONDITIONS PRECEDENT

36. All conditions precedent have been legally satisfied.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff HUDSON INSURANCE COMPANY respectfully asks the Court for a judgment against Texport, Limon, and Aragon-Segura for the following:

    a. A declaration that Hudson has no duty to continue to defend Texport or Limon in

        connection with the Underlying Lawsuit under the Hudson Policy;

b.     A declaration that Hudson has no duty to indemnify Texport or Limon in connection with the Underlying Lawsuit under the Hudson Policy;

c.     Recovery of reasonable and necessary attorneys' fees and costs incurred in prosecuting this action;

d.     Costs of Court;

e.     Prejudgment and post-judgment interest as provided by law; and

f.     For such other and further relief to which Plaintiff may show itself justly entitled.

        Respectfully submitted,

        **RYMER, ECHOLS, SLAY & NELSON-ARCHER, P.C.**

By: _____

        Nathan M. Rymer
        State Bar No. 00792814
        Catherine G. Gross
        State Bar No. 24120870
        1502 Augusta Drive, Suite 400
        Houston, Texas 77057
        Telephone: (713) 626-1550
        Facsimile: (713) 626-1558
        nrymer@resnlaw.com
        cgross@resnlaw.com

        ATTORNEYS FOR PLAINTIFF
        HUDSON INSURANCE COMPANY